# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOHN BROOKINGS, JR. and )
RICHARD SPENCE, )
      Plaintiffs, )
     v. )   C.A. No. N16C-11-177 ALR
       )
VERNON KIRK, Director of the )
Delaware Lottery, *et. al.*, )
      Defendants. )
       )
VICTOR RODRIGUEZ, )
      Plaintiff, )
     v. )   C.A. No. N16C-12-068 ALR
       )
VERNON KIRK, Director of the )
Delaware Lotter, *et. al.*, )
      Defendants. )

Submitted: April 4, 2018 and May 9, 2018
Decided: July 2, 2018

## MEMORANDUM OPINION

*Upon Defendants' Motion for Summary Judgment*
**GRANTED**

*Upon Defendants' Motion in Limine*
**MOOT**

*Upon Plaintiffs' Motion in Limine*
**MOOT**

William L. O'Day, Jr., Esq., Woloshin, Lynch & Associates, P.A., Attorney for Plaintiffs

Julie M. Donoghue, DAG, Department of Justice, Attorney for Defendants

**Rocanelli, J.**

In this consolidated action, Plaintiffs John Brookings, Jr., Richard Spence, and Victor Rodriguez ("Plaintiffs") assert that they collectively own seven Keno Lottery tickets that are each worth $1,000,000.00. Plaintiffs filed suit against Vernon Kirk, as Director of the Delaware Lottery, the Delaware Lottery, and the State of Delaware (collectively, "Defendants"), alleging that Defendants refused to honor these alleged million-dollar Keno tickets. In response, Defendants argue that the Plaintiffs' Keno tickets are invalid because an anomaly occurred with the Keno Computer on December 17, 2015 that caused the same twenty numbers to win for five consecutive Keno drawings, which took place at 11:24 a.m., 11:28 a.m., 11:32 a.m., 11:36 a.m., and 11:40 a.m. ("Anomalous Drawings").

Defendants now move for summary judgment, arguing that Plaintiffs have no legally enforceable claims because the Plaintiffs' Keno tickets resulted from illegal lottery games. Specifically, Defendants argue that the Anomalous Drawings did not have the legally required element of chance, which renders them invalid. Defendants also argue that Plaintiffs cannot recover under a contractual theory. In addition, the parties have each filed a motion *in limine* seeking to exclude certain evidence at trial. For the reasons that follow, the Court grants Defendant's motion for summary judgment.

1

# FACTUAL BACKGROUND

The State of Delaware created the Delaware Lottery pursuant to its constitutional authority to offer certain forms of legalized gambling to the public.[1] The Delaware Lottery offers the game Keno, which the State asserts is a bingo-style lottery game. To play Keno, a player chooses up to ten numbers from 1 to 80, places a wager, chooses how many consecutive games to play, and decides whether to use a Keno bonus, which can multiply the amount won in each game. According to the State, a computer ("Keno Computer") then chooses twenty winning numbers every four minutes. The maximum amount a player can win during a game of Keno is $1,000,000.00 if the player correctly picks ten numbers out of the winning twenty, and if the player chooses to play with a Keno bonus.

The winning numbers for each Keno drawing are displayed on Keno computer monitors located in licensed lottery retailer locations. These computer monitors also display so-called "hot numbers," which Defendants assert are numbers that are currently being more frequently selected than others. The Delaware Lottery uses the "hot numbers" as a marketing tool to encourage individuals to play Keno using those numbers.

On December 17, 2015, at 11:20 a.m., the Delaware Lottery held a Keno drawing with the following winning numbers: 17, 22, 35, 59, 30, 08, 02, 26, 31, 43,

---

[1] *See* Del. Const. art. II, § 17(a).

2

65, 73, 24, 07, 64, 11, 09, 66, 71, 56.  The next five drawings were the Anomalous Drawings, in which the same twenty numbers repeated every time.  According to the State, after the 11:40 a.m. Anomalous Drawing, trouble-shooting was initiated and the Keno Computer was restarted.  Functionality resumed after the restart, and the Keno Computer began generating random numbers again with the next draw at approximately 11:46 a.m.

Plaintiff Rodriquez was at Pockets Discount Liquors around the time of the Anomalous Drawings.  According to Plaintiff Rodriguez, he played an initial game of Keno by randomly selecting his own numbers, but did not win.  However, Plaintiff Rodriguez claims that another patron in the store then suggested that Plaintiff Rodriguez play the "hot numbers" appearing on the Keno computer monitor.

Plaintiff Rodriguez bought another ticket at 11:31:56 a.m. and manually chose the following ten numbers: 31, 35, 43, 56, 59, 64, 65, 66, 71, 73.  Plaintiff Rodriguez claims that this ticket won $1,000,000.00 during the 11:32 a.m. Anomalous Drawing.  Plaintiff Rodriguez then bought two more Keno tickets before the 11:36 a.m. Anomalous Drawing — at 11:35:45 a.m. with the following ten numbers: 02, 07, 08, 09, 11, 17, 22, 24, 26, 30; and at 11:35:51 a.m. with the following ten numbers: 31, 35, 43, 56, 59, 64, 65, 66, 71, 73.  Plaintiff Rodriguez claims that both tickets won $1,000,000.00 in the 11:36 a.m. Anomalous Drawing.  Plaintiff Rodriguez then bought two more tickets before the 11:40 a.m. Anomalous Drawing

3

— at 11:39:13 a.m. with the following ten numbers: 31, 35, 43, 56, 59, 64, 65, 66, 71, and 73; and at 11:39:16 with the following ten numbers: 02, 07, 08, 09, 11, 17, 22, 24, 26, 30. Plaintiff claims that both tickets won $1,000,000.00 in the 11:40 a.m. Anomalous Drawing. Therefore, Plaintiff Rodriguez claims that he holds five winning Keno tickets, each worth $1,000,000.00.

Plaintiffs Brookings and Spence were at Kegler's Pub and Sports Bar around the time of the Anomalous Drawings. Plaintiff Brookings purchased a Keno ticket at 11:35:58 a.m. with the following ten numbers: 02, 07, 08, 17, 22, 31, 35, 43, 56, 59. Plaintiff Brookings claims that this ticket won $1,000,000.00 in the 11:36 a.m. Anomalous Drawing. Plaintiffs Brookings and Spence then jointly purchased another Keno ticket at 11:38:06 a.m., and chose the same ten numbers: 02, 07, 08, 17, 22, 31, 35, 43, 56, 59. Plaintiffs Brookings and Spence claim that this ticket won $1,000,000.00 in the 11:40 a.m. Anomalous Drawing. Therefore, Plaintiffs Brookings and Spence claim that they own two winning Keno tickets, each worth $1,000,000.00.[2]

The Keno Computer system is operated by Scientific Games International ("SGI"). The State claims that, upon learning of the anomaly with the Keno Computer, it immediately instructed SGI to place a hold on all claims related to the

---

[2] At this stage of the proceedings, the record is not fully developed regarding the division of ownership of these two Keno tickets.

Anomalous Drawings.  Nevertheless, a total of $23,574.00 was paid to Keno players who made claims related to the Anomalous Drawings between December 17, 2015 and December 20, 2015.  On December 22, 2015, Defendant Kirk issued a press release stating that the Keno Computer suffered a malfunction and that all claims relating to the Anomalous Draws were suspended.

On December 22, 2015, Defendants asked Gaming Laboratories International ("GLI") to perform a forensic investigation of the Keno Computer.  In a report produced to Defendants on February 1, 2016 ("GLI Report"), GLI concluded that, following the 11:20 a.m. drawing, maintenance was performed on the Keno Computer system and an anomaly occurred with the Keno Computer that caused it to repeat the same twenty numbers.  GLI also found that the anomaly continued for the next five drawings, until the Keno Computer was restarted.  GLI attempted to recreate the anomaly, but was unable to do so.

On February 5, 2016, Defendant Kirk issued a new press release in light of the GLI Report.  Defendant Kirk announced that the Anomalous Drawings were void because the numbers were not randomly selected, which means that the Anomalous Drawings did not constitute a game of chance as required by Delaware law.  Defendant Kirk further stated that all tickets purchased during the Anomalous Drawings were void, and that all amounts paid by players to purchase tickets for the Anomalous Drawings would be refunded.  Even though Defendants did not seek

reimbursement from players who had already been paid for tickets relating to the Anomalous Drawings, SGI indemnified the State for all claims made in relation to the Anomalous Drawings in the amount of $24,886.00, which reflects $23,574.00 for claims made relating to the Anomalous Drawings and $1,312.00 for amounts refunded to players who purchased tickets for the Anomalous Drawings.

## PROCEDURAL BACKGROUND

On November 18, 2016, Plaintiffs Brookings and Spence filed suit alleging that Defendants wrongfully refused to honor their purported million-dollar Keno tickets. Plaintiff Victor Rodriguez filed a nearly identical complaint on December 8, 2016. The Court consolidated the two actions on March 11, 2017.

Defendants now move for summary judgment, arguing that they are entitled to judgment as a matter of law for two reasons. First, Defendants argue that the Anomalous Drawings were not legal lotteries under Delaware law because there was no chance present. Second, Defendants argue that Plaintiffs cannot recover under a contractual theory because the Anomalous Drawings failed to meet Keno rules and because the parties did not have a meeting of the minds. Plaintiffs oppose Defendants' motion for summary judgment.

## STANDARD OF REVIEW

The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party

6

is entitled to judgment as a matter of law."[3] A genuine issue of material fact is one that "may reasonably be resolved in favor of either party."[4] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[5] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the non-moving party."[6] Summary judgment is only appropriate if Plaintiffs' claims lack evidentiary support such that no reasonable jury could find in their favor.[7]

## DISCUSSION

Defendants argue that they are entitled to judgment as a matter of law because the Anomalous Drawings were not games of chance. A legal lottery requires three elements: prize, consideration, and chance.[8] Of these, chance must be the dominant factor.[9] The lottery need not involve "pure" chance.[10] "Rather, the element of

---

[3] Super. Ct. Civ. R. 56(c).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986).

[5] *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979).

[6] *Brozka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[7] *See Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200–05 (Del. 2015); *Edmisten v. Greyhound Lines, Inc.*, 2012 WL 3264925, at *2 (Del. Aug. 13, 2012).

[8] *National Football League v. Governor of State of Delaware*, 435 F. Supp. 1372, 1383 (D. Del. 1939) (citing *Affiliated Enterprises v. Waller*, 5 A.2d 257, 259 (Del. Super. 1939)).

[9] *Id.* at 1385; *see also In re Request of Governor for Advisory Opinion*, 12 A.3d 1104, 1111 (Del. 2009).

[10] *National Football League*, 435 F. Supp. at 1385; *Advisory Opinion*, 12 A.3d at 1111.

chance 'may be accompanied by an element of calculation or even of certainty' provided that 'chance is the dominant or controlling factor.'"[11]

The Anomalous Drawings did not contain the legally required element of chance. An anomaly with the Keno Computer caused the same twenty numbers to repeat in each of the Anomalous Drawings. Moreover, the facts indicate that the anomaly continued until an individual manually restarted the Keno Computer, at which time it resumed functionality and began choosing random numbers. As a result, until the Keno Computer was restarted, there was a 100% chance during each of the Anomalous Drawings that the same twenty numbers would win. Therefore, the Anomalous Drawings did not constitute games of chance.

Plaintiffs argue that chance was present in the Anomalous Drawings for two reasons. First, Plaintiffs argue that they did not know the numbers were repeating, such that the Anomalous Drawings were still games of chance from their perspectives.[12] Second, Plaintiffs argue that even if they knew the numbers were repeating, they did not know for how long the numbers would continue to repeat and had to take the chance that they would continue to repeat. However, Plaintiffs'

---

[11] *Advisory Opinion*, 12 A.3d at 1111 (quoting *National Football League*, 435 F. Supp. at 1384).

[12] The Court notes that, contrary to the State's repeated assertions, there is no evidence that Plaintiffs had actual knowledge that the Keno Computer was malfunctioning.

8

subjective knowledge or perspective cannot create chance where it otherwise does not exist.

As discussed, while the anomaly with the Keno Computer continued, there was a 100% chance that the same twenty numbers would win in each Anomalous Drawing. Therefore, regardless of Plaintiffs' knowledge, the Anomalous Drawings did not constitute games of chance. Accordingly, the Anomalous Drawings were not legal lotteries, and Defendants' motion for summary judgment must be granted.

## CONCLUSION

The Anomalous Drawings were not legal lotteries because they did not have the required element of chance. The Court need not address Defendants' argument that Plaintiffs also cannot recover under a contractual theory. In addition, because the Court grants summary judgment in favor of Defendants, the parties' motions *in limine* are moot.

**NOW, THEREFORE, this 2nd day of July, 2018, Defendants' Motion for Summary Judgment is hereby GRANTED. Defendants' Motion *in Limine* is MOOT. Plaintiffs' Motion *in Limine* is MOOT. Judgment is entered in favor of Defendants.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**

9